**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JONTE ROBINSON et al.,

    *Plaintiffs*,

v.

FEDERAL BUREAU OF PRISONS,

    *Defendant*.

Civil Action No. 22-1098 (TJK)

## MEMORANDUM OPINION AND ORDER

For many years, the Bureau of Prisons, or BOP, assessed kidney function differently for black inmates than for non-black inmates. Plaintiffs—one former and one current black inmate whose kidneys were assessed under that method—sue BOP because they say that policy caused them medical injuries and resulted in denial of their compassionate-release requests. They claim that BOP's race-based kidney-assessment method violated the Administrative Procedure Act, as well as their rights under the Fifth and Eighth Amendments. BOP, emphasizing that it has now changed the policy at issue to a race-neutral one, moves to dismiss for lack of subject-matter jurisdiction and failure to state a claim. The Court finds that BOP has not waived its sovereign immunity, so Plaintiffs may not pursue claims for monetary damages against it. And Plaintiffs lack standing to pursue their other claims seeking declaratory or injunctive relief. Thus, the Court will grant BOP's motion to dismiss but will allow Plaintiffs time to seek leave to file an amended complaint if they so choose.

**I.    Background**

According to the operative complaint, BOP relies on the estimated Glomerular Filtration Rate ("eGFR") to measure the level of kidney disease in an inmate. ECF No. 14 ("Compl.") ¶ 2.

When properly functioning, kidneys remove serum creatinine—a waste "byproduct of muscle activity"—from the bloodstream. *Id.* ¶ 28 n.12. To assess kidney function, the eGFR therefore measures blood concentration of serum creatinine, with lower eGFR scores generally reflecting poorer kidney function. *Id.* ¶¶ 3, 28 n.12, 29. In the BOP context, eGFR scores below 60 for three straight months support a formal stage-three chronic-kidney-disease diagnosis. *Id.* ¶¶ 30 & n.14, 34, 54; *see also id.* ¶ 43 n.28 ("Chronic kidney disease is defined as damaged kidneys or a glomerular filtration rate (i.e., a measure of kidney function) <60 mL/min/1.73 m2 for more than 3 months." (quotation omitted)).

Until recently, BOP used a race-based multiplier to calculate eGFR scores for black inmates but not others.[1] *See* Compl. ¶¶ 1–7, 88. To do so, BOP would multiply black inmates' raw eGFR scores by 1.2. *Id.* ¶¶ 5, 30; *see also id.* ¶ 3 (BOP elevated black inmates' raw eGFR scores by "approximately 21%."). According to the complaint, the multiplier emerged in the 1990s based on "a faulty assumption that Black persons have, on average, greater muscle mass than White persons hence different blood creatinine levels." *Id.* ¶ 4; *see also id.* ¶ 37. This view then supported "the use of race as a proxy for an artificial multiplier applied exclusively to a Black person's eGFR results." *Id.* ¶ 4. The result: black individuals' kidneys "appear healthier," causing their kidney disease to go "undetected" and leading to "negative clinical consequences." *Id.* ¶ 38. According to Plaintiffs, the assumption underlying the multiplier has been "overwhelmingly debunked and rejected by the scientific community." *Id.* ¶ 4; *see also id.* ¶¶ 36–37.

---

[1] BOP refers to this as the "African-American eGFR Multiplier," but it is more technically known as the "Modification of Diet in Renal Disease" and "CKD-EPI formula." Compl. ¶ 3 & n.2. The Court will refer simply to "the multiplier."

Plaintiffs are two black inmates for whom BOP applied the multiplier to calculate their eGFR scores and whose compassionate-release requests were allegedly denied or delayed as a result. Compl. ¶¶ 1, 7, 67–68.

In 2000, Plaintiff Jonte Robinson pleaded guilty to aiding and abetting two murders and was sentenced to 25 years' incarceration. Compl. ¶ 16. He alleges he has an "array of illnesses that include kidney disease and hypertension." *Id.* ¶ 21. So, in September 2020, during the COVID-19 pandemic, Robinson requested compassionate release from BOP. *Id.* ¶ 23. He cited "progressive illness or a debilitating injury." *Id.* BOP denied his request. *Id.*

Robinson next turned to the federal courts for compassionate release. Compl. ¶ 24. Robinson's raw eGFR scores preceding his compassionate-release hearing were 56, 57, and 58. *Id.* ¶¶ 29, 32. But BOP told the compassionate-release court that because Robinson is black, it had applied the multiplier and, based on his *adjusted* eGFR score above 60, it would not diagnose Robinson with chronic kidney disease. *Id.* ¶¶ 29–30, 33–34. Robinson alleges, however, that he "should have been diagnosed with [chronic kidney disease]." *Id.* ¶ 29. If BOP had so diagnosed him, and had the court instead considered his raw eGFR scores, Robinson alleges "he would have most likely been granted compassionate release." *Id.* ¶¶ 32; *see id.* ¶ 39 (The multiplier "jeopardized his compassionate release application."). In the end, the court denied Robinson's compassionate-release request. *Id.* ¶ 26; *see also United States v. Robinson*, No. 04-cr-128 (RDM), 2021 WL 1318027, at *9 (D.D.C. Apr. 8, 2021). Robinson appealed, again challenging BOP's use of the multiplier, but the D.C. Circuit affirmed. Compl. ¶ 27; *see also United States v. Robinson*, 853 F. App'x 681 (D.C. Cir. 2021).

Beyond the denial of his compassionate-release application, Robinson alleges that he continues to receive "substandard medical care" as a result of the multiplier because he is not receiving

3

treatment to prevent further damage to his kidneys. Compl. ¶¶ 32, 39, 40. As just one example, he claims, BOP has "repeatedly" prescribed him with high doses of ibuprofen, a drug toxic to kidneys, and which "may have contributed to his declining kidney function over time." *Id.* ¶ 41 (citation omitted). The medical expert that reviewed Robinson's medical records for his compassionate-release hearing also determined that he faced a tenfold risk of dying from COVID-19 compared to the average healthy American. *Id.* ¶ 21.

Plaintiff Reginald Hicks was convicted for crimes "which involved murder" and began serving a life sentence for those crimes in 1995. Compl. ¶ 47. Like Robinson, Hicks moved for compassionate release. *Id.* ¶ 51. Among other things, Hicks argued to the Superior Court of the District of Columbia that he should be released because he had chronic kidney disease, which "placed him at a high risk of severe illness and death from COVID-19." *Id.* ¶¶ 50–51. The court denied his motion in June 2021 because Hicks had not received the COVID-19 vaccine. *Id.* ¶ 51. Hicks later received his vaccine, so on appeal, the District of Columbia Court of Appeals remanded the case back to the Superior Court for it to consider his eligibility for compassionate release based on his new vaccination status. *Id.* ¶ 55.

On remand, the government argued that the Superior Court still should not grant compassionate release to Hicks based on a chronic-kidney-disease diagnosis because BOP had never so diagnosed him. Compl. ¶ 56. The government argued that Hicks's then-recent eGFR score, 58, would not support a chronic-kidney-disease diagnosis because the multiplier brought his adjusted score above 60. *Id.* A doctor that conducted an independent review of Hicks's records, however, concluded that he should have been diagnosed with stage-three chronic kidney disease and that his condition had "deteriorated" because of the inadequate diagnosis and healthcare management during his incarceration. *Id.* ¶¶ 57–58. Ultimately, in August 2022, Hicks alleges that the Superior

4

Court granted his compassionate-release motion. *Id.* ¶ 65.[2] Although he is now no longer incarcerated, Hicks alleges that the "mismanagement of his medical care" while incarcerated by BOP "pose[s] severe consequences and health problems in restarting a healthy life" and that his "kidneys have been irreversibly damaged." *Id.* ¶ 66.

In April 2022, Robinson (at first without Hicks) sued BOP over its use of the multiplier. ECF No. 1. Under Federal Rule of Civil Procedure 23(b)(1) and (2), Robinson also sued on behalf of a putative class action of other black inmates incarcerated by BOP and affected by the multiplier. ECF No. 1 ¶ 50; *see also* Compl. ¶ 73.

Then, in July 2022, BOP replaced the multiplier with a race-neutral method for assessing kidney function. ECF No. 15-1 at 1–2. In a memorandum to "All BOP Regional Medical Directors & Clinical Directors," BOP announced "that Effective July 12, 2022, our laboratories are changing the calculation of estimated glomerular filtration rate (eGFR) from creatinine to the new CKD-EPI 2021 equation that does not include a race coefficient." *Id.* at 1. Unlike the multiplier, which differentiated between "raw" and "adjusted" or "inflated" eGFR scores for black inmates, Compl. ¶¶ 3, 30, 94, the new, race-neutral method reports only one value, ECF No. 15-1 at 1.

After BOP made this change, Robinson amended the complaint to add Hicks as a plaintiff and to address BOP's new race-neutral method for assessing kidney function. Compl. ¶¶ 47–66, 88; *see also* ECF No. 14-1 (redlined complaint). That operative complaint brings three claims. First, it alleges BOP's use of the multiplier violates the Administrative Procedure Act ("APA"),

---

[2] In fact, the Superior Court's order, attached to BOP's motion to dismiss, reflects that it granted Hicks's separate *motion to reduce his sentence* under the Incarceration Reduction Amendment Act for reasons unrelated to his kidney disease and that it denied as moot his *motion for compassionate release* based on COVID-19. *See* ECF No. 15-4 at 16–17. The Court may take judicial notice of such "related proceedings in other courts." *Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981). In any event, Hicks was released and is no longer incarcerated. Compl. ¶¶ 65–66.

5 U.S.C. § 551 *et seq.*, as it is "contrary to constitutional right," "not in accordance with law," and "arbitrary and capricious." *See* Compl. ¶¶ 82–90. Second, Plaintiffs claim BOP's use of the multiplier violated Plaintiffs' Fifth Amendment rights by treating similarly situated persons (i.e., black and non-black inmates) disparately without a rational basis for doing so. *Id.* ¶¶ 91–96. And third, Plaintiffs allege BOP's use of the multiplier violated Plaintiffs' Eighth Amendment rights to be free from cruel and unusual punishment, which includes a right not to be subjected to a substantial risk of serious harm to their health and safety. *Id.* ¶¶ 97–104. Plaintiffs bring these claims on behalf of a similar putative class of black inmates as in the original complaint. *See* Compl. ¶¶ 73–81; ECF No. 14-1 ¶¶ 73–81.

Plaintiffs seek several forms of relief. They ask the Court to certify the putative class and appoint Plaintiffs as lead plaintiffs and counsel as class counsel. Compl. at 28. They seek declarations that BOP's use of the multiplier violates the APA. *Id.* They also seek a host of injunctive relief. They ask for an injunction preventing BOP's future use of the multiplier. *Id.* Further, they request an order imposing various affirmative obligations on BOP to remedy the multiplier's alleged effects, including, for example, an order that BOP "reevaluate all BOP decisions that resulted in denials of compassionate release applications from Black incarcerated individuals" based on the multiplier. *See id.* at 28–29. Lastly, they seek compensatory damages for Plaintiffs' irreversible physical harm and emotional distress along with costs, expenses, and attorneys' fees. *Id.* at 29–30.

BOP moves to dismiss on both Rule 12(b)(1) and 12(b)(6) grounds. ECF No. 15. As for the Rule 12(b)(1) grounds, BOP advances four arguments. First, Plaintiffs' APA claims are moot because BOP has replaced the multiplier with a race-neutral method for assessing kidney function. *Id.* at 17–22. Second, the Court lacks subject-matter jurisdiction over Robinson's claims that sound in habeas. *Id.* at 22–24. Third, both Plaintiffs lack standing on injury and redressability

6

grounds. *Id.* at 24–36. And fourth, the Court lacks subject-matter jurisdiction over Plaintiffs' money-damages claims because BOP has not waived sovereign immunity. *Id.* at 47–48. BOP also argues that dismissal is appropriate under Rule 12(b)(6) for two reasons. First, Robinson's claims are barred by res judicata. *Id.* at 36–41.[3] Second, Plaintiffs fail to state any plausible Eighth Amendment claim. *Id.* at 41–47. Plaintiffs oppose the motion. ECF No. 17.

## II. Legal Standards

To avoid dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure, "the plaintiff bears the burden of proving that the Court has subject matter jurisdiction." *United States ex rel. Bid Solve, Inc. v. CWS Mktg. Grp., Inc.*, 567 F. Supp. 3d 59, 66 (D.D.C. 2021).[4] Sovereign-immunity claims are jurisdictional. *Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997). Thus, where, as here, a defendant raises the doctrine of sovereign immunity as a bar to claims, the plaintiff must overcome that defense to survive a Rule 12(b)(1) motion to dismiss. *Jackson v. Bush*, 448 F. Supp. 2d 198, 200 (D.D.C. 2006).

Standing also implicates the Court's subject-matter jurisdiction. *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). Thus, plaintiffs have the burden of establishing standing as

---

[3] "Although the defense of *res judicata* is jurisdictional in character, it is an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), and therefore is not a per se jurisdictional bar to court review as contemplated by Federal Rule of Civil Procedure 12(b)(1)," *Youngin's Auto Body v. District of Columbia*, 775 F. Supp. 2d 1, 6 (D.D.C. 2011); *see also Smalls v. United States*, 471 F.3d 186, 189 (D.C. Cir. 2006) ("[T]he defense of res judicata, or claim preclusion, while having a 'somewhat jurisdictional character,' does not affect the subject matter jurisdiction of the district court." (citations omitted)).

[4] "When confronted with . . . a motion to dismiss under both Rule 12(b)(1) and Rule 12(b)(6), the Court must first consider whether it has subject-matter jurisdiction." *Hamilton v. United States*, 502 F. Supp. 3d 266, 272 (D.D.C. 2020) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998)). As the Court is satisfied that it does not have subject-matter jurisdiction over the complaint for the reasons explained, it need not reach BOP's remaining arguments for dismissal, including those implicating Rule 12(b)(6). *See Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 64 (D.D.C. 2011).

well.  *Little v. Fenty*, 689 F. Supp. 2d 163, 166 (D.D.C. 2010).  Standing under Article III requires plaintiffs to "state a plausible claim that they have suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (cleaned up).

To determine standing, the Court may consider the allegations in the complaint, undisputed facts in the record, and, if necessary, its resolution of disputed facts.  *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003).  The Court must "assume the truth of all material factual allegations in the complaint" and grant Plaintiffs "the benefit of all inferences that can be derived from the facts alleged." *Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quotation omitted).  Still, factual allegations demand "closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion." *Tex. Low Income Hous. Info. Serv. v. Carson*, 427 F. Supp. 3d 43, 52 (D.D.C. 2019) (quotation omitted).  Thus, "threadbare recitals of the elements of standing, supported by mere conclusory statements, do not suffice" because courts cannot "accept inferences that are unsupported by the facts set out in the complaint." *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (alterations adopted) (citations omitted).

**III.    Analysis**

The Court will dismiss the complaint for lack of subject-matter jurisdiction.  Plaintiffs cannot sustain their claims for money damages because the government has not waived its sovereign immunity.  And neither Robinson nor Hicks has adequately alleged ongoing or future injury that would be redressed by the remaining declaratory and injunctive relief they seek.

8

### A. The Court Lacks Subject-Matter Jurisdiction Over Plaintiffs' Claims for Monetary Damages

Among other forms of relief, Plaintiffs seek compensatory damages for the "irreversible physical harm and emotional distress" caused by BOP's "inadequate medical care." Compl. at 29. But "the United States may not be sued without its consent and . . . the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). And the United States has not waived sovereign immunity for damages claims under either the APA or the Constitution. *See* ECF No. 15 at 47; *Fletcher v. DOJ*, 17 F. Supp. 3d 89, 93 (D.D.C. 2014); 5 U.S.C. § 702 (permitting APA actions against the "United States seeking relief *other* than money damages" (emphasis added)). Plaintiffs do not contest that they cannot seek compensatory damages under the APA, and they concede they *are not* seeking damages under the APA (or under the United States' sovereign-immunity waiver under the Federal Tort Claims Act). ECF No. 17 at 18–19. Thus, as far as Plaintiffs' claims for monetary damages under the APA go, there is no dispute that the Court lacks subject-matter jurisdiction over them, and they must be dismissed.

As far as their constitutional claims go, Plaintiffs also concede that BOP has not waived sovereign immunity so that they can recover monetary damages for those claims. But they raise the prospect of seeking monetary damages against BOP officials in charge of their medical care under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See* ECF No. 17 at 19. They ask the Court to "assum[e] that Plaintiffs would supply an amendment of pleadings naming specific federal prison officials who engaged in the violative conduct alleged in the complaint" to support their constitutional claims. *Id.*; *see also id.* (seeking "leave of court to cure this defect through an amendment of pleadings"). But, as it stands, the complaint neither alleges any such *Bivens* claims nor identifies as defendants any named or unnamed prison officials. Indeed, the lone defendant identified in the complaint is BOP. Compl. ¶ 69. For now, the Court

9

must ask whether it has jurisdiction over the current complaint as pleaded—not over some hypothetical amended complaint. *See Wilcox v. Georgetown Univ.*, 987 F.3d 143, 150 (D.C. Cir. 2021) ("The district court's skepticism about aspects of [plaintiffs'] case was confined to the factual allegations in the complaint before it."). Plaintiffs concede their pleading "defect" here. *See* ECF No. 17 at 19. Thus, the Court will dismiss all Plaintiffs' claims for money damages for any past harm suffered because it lacks subject-matter jurisdiction over those claims.

### B. The Court Lacks Subject-Matter Jurisdiction Over Plaintiffs' Remaining Claims for Relief

Plaintiffs' remaining claims are for various forms of injunctive and declaratory relief.[5] BOP argues that Plaintiffs lack standing to pursue these claims because neither can show injury or redressability. ECF No. 15 at 24–36. The "irreducible constitutional minimum of standing contains three elements"—injury-in-fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). As explained above, monetary damages are unavailable for Plaintiffs' alleged past injuries, meaning they cannot be redressed in that way. And Plaintiffs seek no other relief that would redress their past injuries. The Court notes that Plaintiffs' allegations that they were injured when BOP applied the multiplier to them and denied or delayed their compassionate release are allegations of *past* injury. Compl. ¶¶ 1, 7, 24–32, 39, 52, 59, 89, 96. These are not ongoing or future injuries that would be redressed by prospective injunctive or declaratory relief because BOP has replaced the multiplier with a race-neutral method for measuring kidney function. And while, as explained in more detail below, Plaintiffs gesture at future injuries to support

---

[5] *See* Compl. at 28–29 (requesting an injunction preventing BOP from using the multiplier in its medical and compassionate-release decisions, and ordering BOP to reevaluate compassionate-release decisions and medical records, establish and develop new processes and guidance, and create a plan to prevent further violative conduct; requesting a declaration that the multiplier is unlawful).

these forward-looking forms of relief, none qualifies as an injury-in-fact. Compl. at 28–29; ECF No. 17 at 12–15. Thus, the entire complaint must be dismissed for lack of standing.[6]

Before proceeding further, one point of clarification: BOP argues that its adoption of the race-neutral method for measuring kidney function moots Plaintiffs' APA claims. ECF No. 15 at 17–22. But in the Court's view, this is a question of *standing*, because BOP changed its policy before Plaintiffs amended their complaint.[7] Judges in this District have observed that "[n]either the Supreme Court nor the D.C. Circuit Court of Appeals has directly resolved the question [of] . . . whether the date of the commencement of an action or the date of the operative complaint is the relevant date for determining standing." *G&E Real Est., Inc. v. Avison Young-Washington, D.C., LLC*, 168 F. Supp. 3d 147, 159 (D.D.C. 2016). But many judges have been "persuaded that the better reading of the applicable law is that the Court must measure standing by the state of the world as of the date of the Amended Complaint." *Id.* at 160; *see also Rockwell Int'l Corp. v.*

---

[6] Although Plaintiffs seek class certification in the operative complaint, "[t]hat . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) (cleaned up); *see, e.g.*, *Cason v. Nat'l Football League Players Ass'n*, 538 F. Supp. 3d 100, 110–12 (D.D.C. 2021).

[7] In any event, even under a mootness analysis, Plaintiffs still come up short. When an agency has "already eliminated the [challenged] [p]olicy and plaintiffs never allege that the [agency] will reinstitute it, any injunction or order declaring it illegal would accomplish nothing— amounting to exactly the type of advisory opinion Article III prohibits." *Akiachak Native Cmty. v. DOI*, 827 F.3d 100, 106 (D.C. Cir. 2016) (quoting *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008)). Plaintiffs do not allege that BOP will resurrect the multiplier. And of course "'the mere power to reenact a challenged [rule] is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists' absent '*evidence* indicating that the challenged [rule] likely will be reenacted.'" *Id.* (emphasis added) (quoting *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997)). Accordingly, and as explained more fully below in the standing discussion, Plaintiffs have provided no reason to believe that BOP is about to revive the multiplier or will fail to apply the race-neutral method of assessing kidney function to Plaintiffs.

11

*United States*, 549 U.S. 457, 473–74 (2007) ("[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction."). Thus, "standing may be assessed by the timing of the filing of the operative complaint in an action—whether the original complaint or a supplemental or amended complaint." *G&E Real Est.*, 168 F. Supp. 3d at 160.[8] The Court does so here.

An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized" and "(b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). To "shift injury from 'conjectural' to 'imminent,' the petitioners must show that there is a 'substantial probability' of injury." *Chamber of Com. of U.S. v. EPA*, 642 F.3d 192, 200 (D.C. Cir. 2011) (cleaned up). "When, as here, a plaintiff seeks prospective declaratory and injunctive relief, he must establish an ongoing or future injury that is 'certainly impending'; he may not rest on past injury." *Fuentes v. Biden*, No. 21-cv-3106 (APM), 2023 WL 1070545, at *1 (D.D.C. Jan. 27, 2023) (cleaned up). Allegations "of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up). The requirement that plaintiffs show an "imminent future injury" to seek injunctive relief "creates a significantly more rigorous burden to establish standing than that on parties seeking redress for past injuries." *Swanson Grp. Mfg. LLC v. Jewell*, 195 F. Supp. 3d 66, 77 (D.D.C. 2016) (citations omitted). Further, the Court's standing inquiry must be "especially rigorous when," as here, "reaching the merits of the dispute would force [it] to decide whether an action taken by one of the

---

[8] *See, e.g.*, *Maniar v. Mayorkas*, No. 19-cv-3826 (EGS), 2023 WL 2709040, at *13 (D.D.C. Mar. 30, 2023) (The "relevant question is whether" plaintiffs could establish "standing as of 'the state of the world' when they filed their operative amended complaint." (quotation omitted)); *Kinsley v. Blinken*, No. 21-cv-962 (JEB), 2021 WL 4551907, at *5 (D.D.C. Oct. 5, 2021) (similar); *Gatore v. DHS*, 327 F. Supp. 3d 76, 91 (D.D.C. 2018) (similar), *aff'd*, No. 21-5148, 2023 WL 2576176 (D.C. Cir. Mar. 21, 2023).

other two branches of the Federal Government was unconstitutional." *Clapper*, 568 U.S. at 408 (citation omitted).

Both Plaintiffs lack standing to seek injunctive and declaratory relief because at the time of the operative complaint, BOP had adopted a race-neutral method for measuring kidney function. Thus, they have not adequately pleaded an ongoing or future injury that this relief would redress.

Plaintiffs allege generally that they "continue to suffer harm" from the multiplier, which "has far-reaching impacts on the availability of life-saving medical resources, treatment outcomes, debilitating health of kidneys, and timely opportunities to seek compassionate release." Compl. ¶ 96; *see also id.* ¶ 88 (The multiplier is "still impacting Plaintiffs and will continue to cause discrimination based on race."). For instance, Robinson alleges that BOP "continues to subject him to substandard medical care" and that he "continues to suffer physical and emotional harm as a result" of "continuing problems in BOP policies and practices that are not rectified." Compl. ¶¶ 39, 46. But these allegations come up short for standing purposes for the simple reason that the source of the injury is no more. Indeed, BOP has not used the multiplier since before the filing of the operative complaint. Thus, there is nothing for the requested injunctive or declaratory relief to redress.

To be sure, Plaintiffs are right that they could demonstrate standing if BOP's use of the multiplier continued to affect them in some way. *Cf. Zukerman v. U.S. Postal Serv.*, 961 F.3d 431, 443 (D.C. Cir. 2020) ("It is clear from [the plaintiff's] allegations, which we accept as true and construe in his favor, that the effects of the alleged violation persist," and thus it would be possible for the court to provide effectual relief.); *Aref v. Lynch*, 833 F.3d 242, 251 (D.C. Cir. 2016). For example, Plaintiffs could meet the standing requirement by showing that BOP did not *actually* change its policy, or that it was likely (for some reason) that BOP would refuse to apply the new

13

race-neutral policy to them. *See Fuentes*, 2023 WL 1070545, at *1; *see also*, *e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) ("[The plaintiff's] standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the [defendant's challenged practice].").

But Plaintiffs have pleaded no facts to suggest any such thing. They allege in conclusory fashion that the race-neutral policy is a "façade to a new formula." Compl. ¶ 88. And in their opposition, they similarly brand BOP's policy change as "superficial." ECF No. 17 at 9. But the Court need not accept such "conclusory statements" that "are unsupported by the facts set out in the complaint." *Arpaio*, 797 F.3d at 19. Similarly, Plaintiffs attack the new policy for not being an "absolute and complete change in policy." ECF No. 17 at 9. They even go as far as to predict "it is likely that broad inconsistency and deviation from the proposed policy will likely occur, enabling more discriminatory eGFR assessments to continue taking place under BOP supervision." *Id.* at 9–10. But again, this is speculation with no supporting factual basis.

For its part, BOP persuasively argues that "it can hardly be said that [BOP] implemented its policy change . . . with the intent to nevertheless continue utilizing a purported race-based formula," especially given that BOP began considering a "newer, race-blind" method before this case was filed. ECF No. 19 at 8 (citation omitted). In fact, BOP's policy change has all the trappings of a formal policy change implemented across the board, including for Plaintiffs. BOP sent a memorandum, titled "Implementation of the CKD-EPI 2021 Race-Free Calculation for Estimated Glomerular Filtration Rate (eGFR)," to "All BOP Regional Medical Directors & Clinical Directors." ECF No. 15-1 at 1. In it, BOP said without qualification:

> Effective July 12, 2022, our laboratories are changing the calculation of estimated glomerular filtration rate (eGFR) from creatinine to the new CKD-EPI 2021 equation that does not include a race coefficient. The National Kidney Foundation and

14

>the American Society of Nephrology's Task Force on Reassessing the Inclusion of Race in Diagnosing Kidney Disease recommended the new equation.

*Id.* The memorandum also attached the medical evidence on which the race-neutral method is based. *Id.* at 3–52. On this record, Plaintiffs have not shown that the multiplier's effects persist in a way that gives them standing.[9]

In addition, Hicks would have to overcome another hurdle to show that BOP's use of the multiplier continued to affect *him*—because he was released from BOP custody before he was even added as a plaintiff. Compl. ¶ 65. Thus, Hicks cannot show that he is likely to be affected by *anything* BOP does (or does not do) going forward.[10] In response, he argues that he is likely to be injured in the future because he is serving five years of supervised release, which does not "foreclose the very undesirable possibility that he may be exposed to BOP's discriminatory practices again." ECF No. 17 at 14–15 (citing *Brannon v. City of Gadsden*, No. 4:13-cv-1229 (VEH), 2015 U.S. Dist. LEXIS 28761, at *2 (N.D. Ala. Mar. 10, 2015)). But of course, Hicks will always face the *possibility* of reincarceration. Mere speculation about future contingent events will not do for standing purposes, even putting aside that this alleged injury is nowhere mentioned in the complaint. *See Lujan*, 504 U.S. at 561; *Clapper*, 568 U.S. at 409; *see also Arpaio*, 797 F.3d at 21 ("When considering any chain of allegations for standing purposes, we may reject as overly

---

[9] Although the Court will dismiss the complaint, out of an abundance of caution it will allow Plaintiffs the opportunity to seek to file an amended complaint to address the deficiencies identified in this Memorandum Opinion if they so choose.

[10] Similarly, the D.C. Circuit has held, "a prisoner's transfer or release from a prison [after a complaint is filed] moots any claim he might have for equitable relief arising out of the conditions of his confinement in that prison." *Scott v. District of Columbia*, 139 F.3d 940, 941 (D.C. Cir. 1998); *Aref v. Barr*, No. 10-cv-539 (BJR), 2019 WL 11593252, at *3 (D.D.C. Nov. 1, 2019) (describing exceptions that do not apply here).

15

speculative those links which are predictions of future events (especially future actions to be taken by third parties).").

Finally, the Court notes that Robinson has pleaded no facts to suggest that his past denial of compassionate release—allegedly brought about by BOP's use of the multiplier—continues to affect him in some way that would support an ongoing or future injury.  In other words, just as the operative complaint identifies nothing that stood in the way of Robinson receiving a kidney evaluation under BOP's race-neutral method on the day it was filed, it also identifies nothing that prevented him from seeking compassionate release again from BOP or his compassionate-release court after he receives such a new evaluation.  *See, e.g.*, *United States v. Baylor*, No. 16-cr-180 (ESH), 2020 WL 5970679, at *1–2 (D.D.C. Oct. 8, 2020) (granting a third compassionate-release motion).  In fact, that court expressly left the door open to changing its mind "if Robinson's medical condition worsens, *or if further testing shows that his condition is, in fact, more severe than the Court understands*."  *Robinson*, 2021 WL 1318027, at *11 (emphasis added).  For his part, Hicks has also not pleaded anything suggesting that the results of *his* previous compassionate-release proceedings continue to injure him in some way.  But in his case, of course, that is because he is no longer in BOP's custody.

\*   \*   \*

Plaintiffs have the "rigorous burden to establish standing," and neither has done so here. *See Swanson*, 195 F. Supp. 3d at 77.  Thus, the Court must dismiss the complaint for lack of subject-matter jurisdiction.

## IV. Conclusion and Order

For these reasons, it is hereby **ORDERED** that BOP's Motion to Dismiss, ECF No. 15, is **GRANTED**. Plaintiffs' operative complaint, ECF No. 14, is **DISMISSED WITHOUT PREJUDICE**. Plaintiffs may seek leave to file a new complaint to correct the deficiencies identified by August 14, 2023. If they do not seek leave by that date, the Court will dismiss the case as well.

**SO ORDERED.**

/s/ Timothy J. Kelly  
TIMOTHY J. KELLY  
United States District Judge

Date: July 13, 2023